IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

IN RE RAIT FINANCIAL TRUST          :          Master File
SECURITIES LITIGATION               :          No 2:07-cv-03148-LDD
_____
                                    :

Legrome D. Davis, J.                                        December 22, 2008

MEMORANDUM

Presently before the Court are four separate motions to dismiss[1] (Doc. Nos. 70-77), Lead

Plaintiff's Opposition in response to these motions to dismiss (Doc. No. 78), four separate replies

to this response[2] (Doc. Nos. 87-90), Defendants RAIT Financial Trust, Betsy Z. Cohen, Daniel

G. Cohen, Ellen J. DiStefano, and Jack E. Salmon's Supplemental Brief Noting New Authority

(Doc. No. 94), Lead Plaintiff's Response to this Supplemental Brief (Doc. No. 97), Defendants'

Second Supplemental Brief (Doc. No. 101), and Lead Plaintiff's Response to this Second

_____

[1]     Defendant Grant Thornton LLP's Motion to Dismiss (Doc. No. 70), Defendants
Edward S. Brown, Frank A. Farnesi, S. Kristin Kim, Arthur Makadon, Daniel Promislo, John F.
Quigley III, and Murray Stempel III's Motion to Dismiss (Doc. Nos. 71-75), Defendants RAIT
Financial Trust, Betsy Z. Cohen, Daniel G. Cohen, Ellen J. DiStefano, and Jack E. Salmon's
Motion to Dismiss (Doc. No. 76), Defendants Friedman, Billings, Ramsey Group, Inc., FBR
Capital Markets Corp., Bear, Stearns, & Co., Inc., UBS Securities LLC, RBC Capital Markets
Corp., KeyBanc Capital Markets, Stifel, Nicolaus & Co., Inc., BMO Capital Markets Corp.,
Piper Jaffray & Co., and RBC Dain Rauscher's Motion to Dismiss (Doc. No. 77).

[2]     Defendant Grant Thornton LLP's Reply (Doc. No. 87), Defendants Edward S.
Brown, Frank A. Farnesi, S. Kristin Kim, Arthur Makadon, Daniel Promislo, John F. Quigley III,
and Murray Stempel III's Reply (Doc. No. 88), Defendants RAIT Financial Trust, Betsy Z.
Cohen, Daniel G. Cohen, Ellen J. DiStefano, and Jack E. Salmon's Reply (Doc. No. 89),
Defendants Friedman, Billings, Ramsey Group, Inc., FBR Capital Markets Corp., Bear, Stearns,
& Co., Inc., UBS Securities LLC, RBC Capital Markets Corp., KeyBanc Capital Markets, Stifel,
Nicolaus & Co., Inc., BMO Capital Markets Corp., Piper Jaffray & Co., and RBC Dain
Rauscher's Reply (Doc. No. 90).

1

Supplemental Brief (Doc. No. 105).  For the reasons set forth below, Defendants' Motions are granted in part and denied in part.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant RAIT Financial Trust ("RAIT") was founded in 1997 by Defendant Betsy Z. Cohen ("Betsy Cohen") as a real estate investment trust ("REIT") that provides financing for home builders, mortgage lenders, and other real estate companies.  On June 8, 2006, Defendant RAIT announced plans to merge with Taberna Realty Finance Trust ("Taberna"), another REIT, after Taberna's failed initial public offering ("IPO") in April 2006.  Betsy Cohen's son, Defendant Daniel G. Cohen ("Daniel Cohen"), served as the Chairman and CEO of Taberna. Like RAIT, Taberna also originated financing for companies involved in the real estate industry. This financing often took the form of trust preferred securities (TruPS), which Taberna would then structure into collateralized debt obligations (CDOs).  On December 11, 2006, the merger between RAIT and Taberna closed, and Taberna became a wholly-owned subsidiary of RAIT. Betsy Cohen retained her position as Chairman of RAIT but vacated the position of Chief Executive Officer ("CEO"), which Daniel Cohen subsequently filled.  Defendant Jack E. Salmon ("Salmon") took the position as Chief Financial Officer ("CFO"), while Ellen J. DiStefano ("DiStefano) served as the Chief Accounting Officer ("CAO").

Through the merger with Taberna, RAIT acquired Taberna's interest in various CDO entities.  According to Plaintiffs, many issuers of the TruPS that collateralized RAIT's CDOs were companies specializing in homebuilding, subprime mortgage lending, or Alt-A mortgage lending, three markets that crashed throughout the period at issue in this action.  After RAIT announced on July 31, 2007, that one of these issuers, American Home Mortgage Investment

Corporation ("AHM"), defaulted on approximately $95 million of financing provided by RAIT, the price of RAIT's common stock fell by $5.72 per share.  Days later, on August 2, 2007, Plaintiffs claim that Defendant Daniel Cohen publicly disclosed that RAIT had $377 million in exposure from investments such as TruPS in the crashing homebuilder and mortgage markets.

During the period between the merger announcement on June 8, 2006, and Daniel Cohen's public disclosure on August 2, 2007, Plaintiffs assert that RAIT and its officers, trustees, underwriters, and auditor made several false and misleading statements of material fact to investors regarding RAIT's exposure to losses resulting from Taberna's business.  Lead Plaintiff Brahman Capital Corporation brings this class action on behalf of itself and all persons or entities that acquired securities of Defendant RAIT from June 8, 2006 through August 3, 2007. Employees' Retirement System of the State of Rhode Island ("ERS") has also joined this action as the Additional Named Plaintiff.  In the Complaint, Plaintiffs assert claims against a variety of defendants under both the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act").  (Compl. ¶ 12.)

Plaintiffs' claims based on the Securities Act seek redress for securities purchased in the

January 2007 Common Stock Offering[3] and the July 2007 Preferred Stock Offering.[4]

Specifically, Count One is brought pursuant to section 11 of the Securities Act against Defendant

RAIT, the Officer Defendants,[5] the Trustee Defendants,[6] and the Common Stock Underwriter

Defendants[7] for false statements of material fact made in the Registration Statement for the

January 2007 Common Stock Offering.  (Id. ¶¶ 163-78.)  Count Two is brought pursuant to

section 12(a)(2) of the Securities Act against RAIT and the Common Stock Underwriter

---

[3]    According to the Complaint, on or about January 24, 2007, RAIT raised more than $390 million through its sale of 11.5 million shares of common stock at $34 per share. (Compl. ¶ 5.)  This offering of common stock was made pursuant to a Form S-3 Shelf Registration Statement filed on January 10, 2007, and prospectus supplements dated January 10, 2007, January 12, 2007, and January 19, 2007 (collectively, the "January 2007 Registration Statement").  (Id. ¶ 113.)  These documents incorporated by reference RAIT's Form 10-K Annual Report for the year ended December 31, 2005, RAIT's Form 10-Q quarterly reports for the quarters ended March 31, 2006, June 30, 2006, and September 30, 2006, and RAIT's Form 8-K/A dated December 11, 2006.

[4]    According to the Complaint, on or about July 5, 2007, RAIT raised more than $40 million in its sale of 1.6 million shares of Series C Preferred stock at $25 per share.  (Compl. ¶ 5.)  This offering of preferred stock was made pursuant to a Form S-3 Shelf Registration Statement filed on January 10, 2007, prospectus supplements dated June 25, 2007 and June 28, 2007, a free writing prospectus dated June 29, 2006, and a Form 8-A Registration Statement filed on June 29, 2007 (collectively, the "July 2007 Registration Statement").  (Id. ¶ 124.)  These documents incorporated by reference RAIT's Form 10-K Annual Report for the year ended December 31, 2005, and RAIT's Form 10-Q quarterly reports for the quarter ended March 31, 2007.

[5]    The Officer Defendants consist of Defendants Daniel Cohen, Betsy Cohen, Salmon, and DiStefano.

[6]    The Trustee Defendants consist of Defendants Edward S. Brown, Frank A. Farnesi, S. Kristin Kim, Arthur Makadon, Daniel Promislo, John F. Quigley III, and Murray Stempel III.

[7]    The Common Stock Underwriters consist of Defendants Friedman, Billings, Ramsey Group, Inc., FBR Capital Markets Corp., Bear, Stearns, & Co., Inc., UBS Securities LLC, RBC Capital Markets Corp., KeyBanc Capital Markets, Stifel, Nicolaus & Co., Inc., and BMO Capital Markets Corp.

Defendants for false statements of material fact made in the Registration Statement for the January 2007 Common Stock Offering.  (Id. ¶¶ 179-87.)  Count Three is brought pursuant to section 15 of the Securities Act against Defendants Daniel Cohen, Betsy Cohen, and Salmon as persons having control of RAIT's security violations alleged in Count One.  (Id. ¶¶ 188-96.)  Count Four is brought pursuant to section 11 of the Securities Act against Defendant RAIT, the Officer Defendants, the Trustee Defendants, Grant Thornton LLP ("Grant Thornton"), and the Preferred Stock Underwriter Defendants[8] for false statements of material fact made in the Registration Statement for the July 2007 Preferred Stock Offering.  (Id. ¶¶ 197-214.)  Count Five is brought pursuant to section 12(a)(2) of the Securities Act against RAIT and the Preferred Stock Underwriter Defendants for false statements of material fact made in the Registration Statement for the July 2007 Preferred Stock Offering.  (Id. ¶¶ 215-23.)  Count Six is brought pursuant to section 15 of the Securities Act against Defendants Daniel Cohen, Betsy Cohen, and Salmon as persons having control of RAIT's security violations alleged in Count Four.  (Id. ¶¶ 224-32.)  All claims pursuant to the Securities Act are based in strict liability and negligence and not in fraud or intentional misconduct.  (Id. ¶¶ 163, 179, 188, 197, 215, 224.)

Plaintiffs' claims based on the Exchange Act seek redress for securities purchased throughout the class period.  Count Seven is brought pursuant to section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder for fraudulent activity and misleading statements by Defendants RAIT, Daniel Cohen, Betsy Cohen, and Salmon.  (Id. ¶¶ 403-09.)  Count Eight is brought pursuant to section 20(a) of the Exchange Act against Defendants Daniel Cohen, Betzy

---

[8]     The Preferred Stock Underwriters consist of Defendants Friedman, Billings, Ramsey Group, Inc., FBR Capital Markets Corp., Bear, Stearns, & Co., Inc., Stifel, Nicolaus & Co., Inc., Piper Jaffray & Co., and RBC Dain Rauscher.

Cohen, and Salmon as persons having control of RAIT's violations alleged in Count Seven.  (Id. ¶¶ 410-16.)

All Defendants now bring four separate motions to dismiss Plaintiffs' Complaint: one by Grant Thornton, one by both the Common Stock and Preferred Stock Underwriter Defendants, one by the Trustee Defendants, and one by both RAIT and the Officer Defendants.

## II.   LEGAL STANDARD

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1).  Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007).  In evaluating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1), we must accept as true all factual allegations set forth in the complaint and must construe those facts in favor of the nonmoving party.  Id. (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).  On a motion to dismiss for standing, the plaintiff "'bears the burden of establishing' the elements of standing." Id. (citing FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996)).  However, "general factual allegations of injury resulting from the defendant's conduct may suffice."  Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  When evaluating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), we must accept as true all factual allegations set forth in the complaint.  See Malia v. General Electric Co., 23 F.3d 828, 830 (3d Cir. 1994).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007), and a court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  Kost v. Kozakiewicz, 1 F.3d

176, 183 (3d Cir. 1993) (internal quotation marks omitted).  In other words, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965) (ellipses in original).  Therefore, a claim may be dismissed when the facts alleged and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought. See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179-80 (3d Cir. 1988). However, a claim for securities fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b).[9]

In dealing with any motion to dismiss, the court may look to the allegations made in the complaint, the exhibits attached to the complaint, and any documents whose authenticity no party questions and whose contents are alleged in the complaint.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).  Documents attached to a defendant's motion to dismiss may only be considered if they are referred to in the plaintiff's complaint and if they are central to the plaintiff's claims.  Id.

III.   DISCUSSION

In their motions to dismiss, Defendants raise a host of issues as grounds for dismissal. We will address each challenge to the claims in turn.

---

[9]     Pursuant to Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.  For those actions subject to the Private Securities Litigation Reform Act, the complaint "must (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' 15 U.S.C. § 78u-4(b)(2)."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2508 (2007).

A.      Plaintiff Standing (Counts Four through Six)

All Defendants allege that, because Plaintiffs only purchased securities in the January

2007 Common Stock Offering, Plaintiffs have no standing to bring claims for security violations

associated with the July 2007 Preferred Stock Offering.  Therefore, Defendants assert that

Plaintiffs' claims for violations of the Securities Act arising out of the July 2007 Preferred Stock

Offering in Counts Four through Six must be dismissed.

In order to establish constitutional standing, a plaintiff must demonstrate the following:

> (1) [A]n injury-in-fact, which is an invasion of a legally protected
> interest that is (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical; (2) a causal connection
> between the injury and the conduct complained of; and (3) that it
> must be likely, as opposed to merely speculative, that the injury will
> be redressed by a favorable decision.

Winer Family Trust v. Queen, 503 F.3d 319, 325 (3d Cir. 2007); see also Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560-61 (1992).  In class action suits, "[n]amed plaintiffs who represent a

class must allege and show that they personally have been injured, not that injury has been

suffered by other, unidentified members of the class to which they belong and which they purport

to represent."  Klein v. Gen. Nutrition Cos., 186 F.3d 338, 345 (3d Cir. 1999) (citing Lewis v.

Casey, 518 U.S. 343, 357 (1996)).  In other words, at least one named plaintiff must have

standing to pursue each claim stated in the complaint.  Thus, in the instant action, either Lead

Plaintiff or the Additional Named Plaintiff must have purchased securities that are traceable to

the allegedly false or misleading statements of material fact in order to proceed on their claims

for violations of the Securities Act.

In the Complaint, Plaintiffs expressly state that "Lead Plaintiff and members of the Class

8

purchased RAIT Common Stock issued in, or traceable to, the January 2007 Registration

Statement." (Compl. ¶ 176.) When referencing the July 2007 Preferred Stock Offering,

Plaintiffs only state that "[m]embers of the Class purchased RAIT Preferred Stock issued

pursuant or traceable to the July 2007 Registration Statement" and thus fail to state that any

named plaintiff purchased such stock. (Compl. ¶ 212.) Therefore, it appears that no named

plaintiff purchased any securities traceable to the July 2007 Registration Statement. Indeed,

Plaintiffs point to no portion of the Complaint in their Response to Defendants' Motions to

Dismiss that alleges purchases of securities by either Lead Plaintiff or Additional Named

Plaintiff in the July 2007 Preferred Stock Offering. Therefore, Plaintiffs have no standing to

pursue claims for violations of the Securities Act in Counts Four through Six.

      Plaintiffs insist that this Court should not address Defendants' standing argument until

class certification is complete so that Plaintiffs can add to the action a named plaintiff with

standing to bring Counts Four through Six. However, the "first and fundamental question" for a

court is "that of jurisdiction." Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296

(3d Cir. 2003). If Plaintiffs do not have constitutional standing, this Court "lack[s] subject

matter jurisdiction to address the merits" of their claims. Id. (quoting ACLU-NJ v. Township of

Wall, 246 F.3d 258, 261 (3d Cir. 2001)). As a result, the question of standing is properly

addressed at the motion to dismiss stage, and Plaintiffs must allege the elements of standing in

their Complaint to avoid dismissal. Shapiro v. UJB Fin. Corp., 964 F.2d 272, 286 (3d Cir.

1992).[10]

---

[10]     Because we dismiss Counts Four through Six for lack of standing, we will not
address Defendants' alternative grounds for dismissing these Counts.

      B.    False or Misleading Statement of Material Fact in Disclosures Related to the January 2007 Common Stock Offering (Counts One through Three)

Defendant RAIT, the Officer Defendants, the Trustee Defendants, and the Common Stock Underwriter Defendants all challenge Plaintiffs' claims under sections 11, 12(a)(2), and 15 of the Securities Act arising out of the January 2007 Common Stock Offering.  Defendants divide the statements identified in Plaintiffs' Complaint into two categories: (1) alleged misstatements about Defendant RAIT's credit underwriting and monitoring processes; and (2) alleged misstatements about Defendant RAIT's accounting practices and particular financial items such as net income and earnings resulting therefrom.  For each of these statements, Defendants assert that Plaintiffs have not alleged any facts showing that the statements were false when made and material to the reasonable investor.

Because Plaintiffs only allege claims for strict liability and negligence and expressly disclaim any claim for fraud, the particularity requirements of Federal Rule of Civil Procedure Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), do not apply.  See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 274 (3d Cir. 2006); In re Adams Golf Sec. Litig., 381 F.3d 267, 273 n.5 (3d Cir. 2004) (citing Shapiro v. UJB Fin. Corp., 964 F.2d 272, 288 (3d Cir. 1992)).  Thus, to state a claim, Plaintiffs need only make "a short and plain statement of the claim showing that the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a).  The complaint "must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 (2007) (quoting Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005)).  At the pleading stage, we must accept the allegations in Plaintiffs'

Complaint as true, and so long as Plaintiffs have alleged facts that support a violation of each claimed section of the Securities Act, we must find that Plaintiffs have stated a claim upon which relief can be granted.

Plaintiffs are required to adequately allege the elements of falsity and materiality for sections 11, 12(a)(2), and 15 of the Securities Act.[11]  In order to establish the element of falsity, a plaintiff must plead that the statements at issue were untrue or misleading at the time they were made.  For the element of materiality, the plaintiff must allege that a reasonable investor would consider disclosure of the falsity of the statement as important in making an investment due to the statement's effect in "significantly alter[ing] the 'total mix' of information made available" to the investor.  In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 369 (3d Cir. 1993). "[M]ateriality is a mixed question of law and fact which the trier of fact ordinarily decides . . . ." Id. at 369 n.13.  The court may determine that the misstatements are immaterial as a matter of law only where "the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality."  Id.  We will address the elements of falsity and materiality as we examine each of the misstatements alleged by Plaintiffs.

The first type of misstatement identified by Plaintiffs relates to claims by Defendant

---

[11]     Section 11 of the Securities Act creates a cause of action for any person acquiring a security pursuant to a registration statement that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).  Section 12(a)(2) of the Securities Act makes liable any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading," to the person purchasing the security from him.  15 U.S.C. § 77l(a)(2).  Section 15 of the Securities Act creates liability in any person controlling any person liable under sections 11 or 12(a)(2).  15 U.S.C. § 77o.

RAIT in the January 2007 Registration Statement regarding RAIT's credit underwriting and monitoring processes.[12]  Plaintiffs claim that these processes "were not designed to minimize investment risk as stated"[13] and point to the failing market and the declining financials of many of RAIT's TruPS issuers to support this assertion.  (Compl. ¶¶ 84, 96-103, 120.)  Plaintiffs seem to imply that, if Defendant RAIT was conducting its credit underwriting and monitoring processes as advertised in its January 2007 Registration Statement, Defendant RAIT would have been aware of and would have been required to disclose the significant declines experienced by its TruPS issuers throughout 2005 and 2006 in such filings.  Because Defendant RAIT did not note these impairments, Plaintiffs conclude that Defendant RAIT's credit underwriting and monitoring processes must have been deficient compared to what was asserted in the January 2007 Registration Statement.  (See Lead Pl.'s Mem. Opp'n Mot. Dismiss, 45, 76.)  This is not "fraud by hindsight" as alleged by Defendants.  Plaintiffs are not claiming that Defendant RAIT's credit underwriting and monitoring processes did not perform as promised after the filing of the January 2007 Registration Statement.  Rather, Plaintiffs are claiming that the January 2007 Registration Statement misrepresented the credit underwriting and monitoring processes that

---

[12]     Such statements include the following: RAIT's "credit underwriting involves an extensive due diligence process that seeks to identify risks related to each proposed investment before an investment decision is made and, thereafter, to monitor each investment on a continuous basis"; Taberna has a "disciplined underwriting process and recurring credit analysis"; Taberna "seeks to manage its credit risk through the underwriting processes that it performs in advance of acquiring an investment and its ongoing credit analysis and monitoring procedures."  (Compl. ¶¶ 116-17 (quoting the January 2007 Registration Statement and the Form 8-K/A incorporated by reference therein).)

[13]     Plaintiffs stretch the actual language of the January 2007 Registration Statement and any documents incorporated by reference thereto.  The Registration Statement only claims that these processes are in place to identify and manage risks.  However, Plaintiffs' mischaracterization of the language in the Registration Statement has no effect on our analysis.

existed at the time of filing.  Because we must accept all factual allegations and any reasonable

inferences drawn therefrom as true at the pleading stage, we therefore find that Plaintiffs have

adequately alleged falsity.

We also determine that Plaintiffs have adequately alleged materiality with respect to

Defendant RAIT's credit underwriting and monitoring processes.  Defendants do not claim that

the failure of RAIT's credit underwriting and monitoring processes would not be material to the

reasonable investor.  Instead, Defendants claim that, because the nature of RAIT's investments as

well as the associated risks were fully disclosed, any misstatements involving RAIT's credit

underwriting and monitoring did not significantly alter the total mix of information available to

investors.  (See Def. RAIT & Officer Defs.' Mem. Supp. Mot. Dismiss, 12-13; Underwriter

Defs.' Mem. Supp. Mot. Dismiss, 20-23; Trustee Defs.' Mem. Supp. Mot. Dismiss, 15.)  This

argument relies on the "bespeaks caution" doctrine.  In re Donald J. Trump Casino Sec. Litig., 7

F.3d at 371.  Defendants specifically point out that the January 2007 Registration Statement

made clear that RAIT was exposed to credit risk and argue that this cautionary language negated

the materiality of any alleged misrepresentation.  (See Def. RAIT & Officer Defs.' Mem. Supp.

Mot. Dismiss, 12-13; Underwriter Defs.' Mem. Supp. Mot. Dismiss, 20-23; Trustee Defs.' Mem.

Supp. Mot. Dismiss, 15.)  But disclosure of the fact that RAIT's investments inherently carry

risks does not mean that a reasonable investor would find unimportant the fact that RAIT's credit

underwriting and monitoring practices are incapable of detecting risk.  It is one thing to say that a

company is unavoidably exposed to credit risk in the regular course of conducting business,

while it is another thing to say that a company lacks the ability to detect the presence and extent

of that risk.  Therefore, we cannot say that Plaintiffs failed to plead materiality.

13

Defendants insist that any deficiency in RAIT's credit underwriting and monitoring processes compared to the description in the January 2007 Registration Statement amounts to "mere puffery."  (See Def. RAIT & Officer Defs.' Mem. Supp. Mot. Dismiss, 14-15; Underwriter Defs.' Mem. Supp. Mot. Dismiss, 19-20; Trustee Defs.' Mem. Supp. Mot. Dismiss, 15.)  We disagree.  "Certain vague and general statements of optimism have been held not actionable as a matter of law because they constitute no more than "puffery" and are understood by reasonable investors as such."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1428 n.14 (3d Cir. 1997).  We cannot say that a statement claiming that RAIT's "credit underwriting involves an extensive due diligence process" is mere puffery when Plaintiffs allege that RAIT "did not conduct any meaningful ongoing credit analysis whatsoever."  (Lead Pl.'s Mem. Opp'n Mot. Dismiss, 76.)  As previously discussed, we have found Plaintiffs' conclusions relating to the complete deficiency of Defendant RAIT's credit underwriting and monitoring to be reasonably inferred from the factual allegations made in Plaintiffs' Complaint.  Thus, we cannot conclude at this stage of the litigation that the January 2007 Registration Statement was merely exaggerated and not an affirmative misrepresentation.

The next category of misstatements alleged by Plaintiffs relates to Defendant RAIT's accounting practices; specifically, Plaintiffs claim that statements asserting compliance with generally accepted accounting practices ("GAAP") were untrue.  According to the Complaint, the Form 8-K/A, which was filed on December 11, 2006, and incorporated by reference into the January 2007 Registration Statement, reported that "Taberna had a 'loan loss' reserve of approximately $2.4 million for the quarter ended September 30, 2006, and that the company accounted for its investments in debt and equity securities pursuant to Statement of Financial

Accounting Standards ("SFAS") No. 115."  (Compl. ¶ 117.)  SFAS No. 115, "Accounting for

Certain Investments in Debt and Equity Securities," states in part:

> For individual securities classified as either available-for-sale or held-to-maturity, an enterprise shall determine whether a decline in fair value below the amortized cost basis is other than temporary.  For example, if it is probable that the investor will be unable to collect all amounts due according to the contractual terms of a debt security not impaired at acquisition, an other-than-temporary impairment shall be considered to have occurred.  If the decline in fair value is judged to be other than temporary, the cost basis of the individual security shall be written down to fair value as a new cost basis and the amount of the write-down shall be included in earnings (that is, accounted for as a realized loss).

(Id. ¶ 142; Def. RAIT & Officer Defs.' Mot. Dismiss, Ex. 25, at 9.)  The Complaint alleges that

Defendant RAIT was not in the practice of applying SFAS No. 115 because "RAIT failed to take

other-than-temporary, asset impairment charges to its TruPS investments when it was required to

do so."  (Compl. ¶ 141.)  The Complaint states that, as a result, "RAIT avoided taking necessary

charges to earnings," leading to the understatement of loan loss reserves and the overstatement of

various financial items such as net income.  In other words, Plaintiffs allege that the claim in the

January 2007 Registration Statement that RAIT complied with GAAP was itself materially false

and misleading, but also that this failure to comply with GAAP resulted in a "materially false and

misleading picture of [RAIT's] true results of operations for a given period."  (Id. ¶¶ 140-41.)

Whether such statements are false turns on whether Defendant RAIT should have

determined that certain impairments were "other-than-temporary" based on the probability that

RAIT would not be able to collect all amounts due.  Plaintiffs make several factual allegations

supporting the conclusion that RAIT knew about other-than-temporary impairments that would

have been noted if RAIT was in compliance with GAAP.  Plaintiffs point to the financial

difficulties of many of RAIT's TruPS issuers throughout the years 2005 and 2006.  (Compl. ¶¶ 84, 96-103, 120.)  Plaintiffs allege that, at the time the statements in the January 2007 Registration Statement were made, several RAIT insiders were aware that TruPS issuers were financially distressed and likely to default.  (Id. ¶¶ 104-06.)  Taking these allegations as true, Plaintiffs have adequately alleged that there was a probability that RAIT would not be able to collect all amounts owed by its TruPS issuers and that therefore RAIT was not in compliance with GAAP as claimed in the January 2007 Registration Statement.  Indeed, "assuming that consistency with GAAP is enough to preclude liability, it is a factual question whether [a company's] accounting practices were consistent with GAAP," and thus, we cannot determine this issue on a motion to dismiss.  In re Burlington Coat Factory, 114 F.3d 1410, 1421 (3d Cir. 1997).  This is not "fraud by hindsight" as alleged by Defendants.  Plaintiffs are not claiming that Defendant RAIT failed to comply with GAAP after the filing of the January 2007 Registration Statement.  Instead, Plaintiffs are claiming that the January 2007 Registration Statement misrepresented Defendant RAIT's compliance with GAAP at the time of filing.  Therefore, we find that Plaintiffs have adequately alleged falsity with respect to their claims relating to Defendant RAIT's accounting practices and other financial items resulting therefrom.

Plaintiffs have also adequately alleged materiality.  To the extent that Defendants challenge materiality, they do not argue that a misstatement of RAIT's accounting practices and resulting financials is not material information by itself.  Instead, Defendants again rely on the "bespeaks caution" doctrine by arguing that, because the nature of and the risks associated with RAIT's investments were fully disclosed, any misstatements involving RAIT's accounting practices did not significantly alter the total mix of information available to investors.  (See

16

Underwriter Defs.' Mem. Supp. Mot. Dismiss, 20-23; Trustee Defs.' Mem. Supp. Mot. Dismiss, 15.)  But even with the knowledge that RAIT's investments inevitably carry risks, surely a reasonable investor would find important the accurate reporting of RAIT's financial statements through compliance with GAAP.  Therefore, we cannot say that Plaintiffs failed to plead materiality.

We find that Plaintiffs have sufficiently pleaded the elements of falsity and materiality for each misstatement alleged to have been made in the January 2007 Registration Statement.  Therefore, we will not dismiss Plaintiffs' claims under the Securities Act for failure to adequately allege such elements.[14]

---

[14]     In their Reply, Defendant RAIT and the Officer Defendants make two additional arguments, which we will address briefly here.  First, they state that the failure of RAIT to disclose the identities of the TruPS issuers was not fraud.  (Def. RAIT & Officer Defs.' Reply, 21-22.)  But it does not seem that Plaintiffs are claiming that this omission constituted a violation under the Securities Act; rather, Plaintiffs state that, "[b]ecause RAIT did not disclose the specific companies to which it had exposure, [RAIT's misstatements] were particularly important."  (Compl. ¶ 3.)  Thus, Plaintiffs' allegations that RAIT failed to disclose the TruPS issuers relate to the element of materiality and do not assert an additional fraudulent statement.  Second, Defendant RAIT and the Officer Defendants claim that Plaintiffs cannot allege a duty to update or correct the January 2007 Registration Statement under section 11 of the Securities Act.  (Def. RAIT & Officer Defs.' Reply, 22-23.)  The Third Circuit has recognized a duty to correct statements that were subsequently discovered to be incorrect when made and a duty to update "statements that, although reasonable at the time made, become misleading when viewed in the context of subsequent events."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1431 (3d Cir. 1997).  However, these cases address the duty to update and the duty to correct in the context of section 10(b) of the Exchange Act and do not expressly extend their logic to section 11 of the Securities Act.  Indeed, section 11 expressly limits its application to the time "when such part [of the registration statement] became effective."  Therefore, Plaintiffs cannot claim a duty to update or correct the January 2007 Registration Statement under Count One.  Because Defendants did not challenge Plaintiffs' ability to assert a duty to update or correct the January 2007 Registration Statement under the Exchange Act, Plaintiffs can proceed on this theory under Count Seven.  Nevertheless, the fact that Plaintiffs cannot assert a duty to update or correct under section 11 of the Securities Act has no bearing on Plaintiffs' ability to bring a cause of action generally against Defendants in Count One.  As discussed above, Plaintiffs have adequately pleaded several false statements of material fact that support such a claim against Defendants.

C.     Corporate Mismanagement (Counts One through Three)

Defendant RAIT, the Officer Defendants, and the Trustee Defendants state that Plaintiffs'

allegations with respect to sections 11, 12(a)(2), and 15 amount to no more than corporate

mismanagement.  (See Def. RAIT & Officer Defs.' Mem. Supp. Mot. Dismiss, 12 n.8; Trustee

Defs.' Mem. Supp. Mot. Dismiss, 5-9.)  As a result, these Defendants argue that the proper

remedy is a shareholder derivative suit, and not the action brought by Plaintiffs under the federal

securities laws.  (Id.)

The Supreme Court has held that acts of corporate mismanagement do not violate section

10(b) of the Exchange Act or Rule 10b-5 promulgated thereunder.  Santa Fe Indus., Inc. v.

Green, 430 U.S. 462 (1977).  Courts have extended this reasoning to claims brought under the

Securities Act.  In re Craftmatic Sec. Litig., 890 F.2d 628, 638 n.14 (3d Cir. 1989).  In holding

that acts of corporate mismanagement do not violate the federal securities laws, the Court

emphasized the fact that Congress passed the Securities Act to ensure the full and fair disclosure

of information in securities transactions.  Id.  As stated above, we have found that Plaintiffs

adequately plead the elements necessary to bring a claim under sections 11, 12(a)(2), and 15 of

the Securities Act.  Acts of corporate mismanagement may have also occurred under the facts

pleaded by Plaintiff, but the facts alleged support Counts One through Three of the Complaint.

D.     Meaning of Seller in Section 12(a)(2) of the Securities Act (Count Two)

The Complaint alleges that Lead Plaintiff and members of the class purchased their

common stock shares from the Common Stock Underwriter Defendants who had previously

acquired the shares from RAIT.  (Compl. ¶ 182.)  Because Plaintiffs did not purchase their shares

directly from RAIT, Defendant RAIT claims that it is not a "seller" within the meaning of section

18

12(a)(2) of the Securities Act and that thus Plaintiffs cannot maintain Count Two against the company.

Liability under section 12(a)(2) "extends not only to those who pass title to the purchaser, but also to those who successfully solicit the purchase, motivated by their own or the securities owner's financial interest."  In re Craftmatic Sec. Litig., 890 F.2d 628, 636 (3d Cir. 1989). Although Defendant RAIT issued the common stock, the company did not actually pass title to Plaintiffs.  See Lone Star Ladies Inv. Club v. Schlotzsky's, Inc., 238 F.3d 363, 369-70 (5th Cir. 2001) (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1215 (1st Cir. 1996)).  Therefore, RAIT can only be characterized as a seller under section 12(a)(2) of the Securities Act if it solicited the purchase by Plaintiffs from the Common Stock Underwriter Defendants.  In order for an issuer to qualify as a solicitor seller, there must be "direct and active participation in the solicitation of the immediate sale."  In re Craftmatic Sec. Litig., 890 F.2d at 636.  Involvement in the preparation of the prospectus, standing alone, is not sufficient to create liability under section 12(a)(2).  Id.  However, a complaint alleging that "defendants 'solicited plaintiffs' to purchase [a company's] securities and that in so doing were motivated by a desire to serve their own financial interests" will survive a motion to dismiss.  In re Westinghouse Sec. Litig., 90 F.3d 696, 717 (3d Cir. 1996).

We find that Plaintiffs have made sufficient factual allegations supporting the classification of Defendant RAIT as a solicitor seller to state a claim.  In addition to demonstrating RAIT's involvement in the preparation of the January 2007 Registration Statement, the Complaint also alleges that RAIT solicited Plaintiffs' purchase of common stock and that RAIT had a financial interest in the success of the sale.  (Compl. ¶¶ 112-14, 182.)

According to the Third Circuit in <u>Westinghouse</u>, such statements constitute factual allegations, which we must take as true at the pleading stage.  90 F.3d at 717.  Therefore, we will not dismiss RAIT as a defendant in Count Two of Plaintiffs' Complaint.

       E.     <u>Availability of Reasonable Reliance as a Defense for Outside Trustees (Count One)</u>

The Trustee Defendants assert that they reasonably relied upon the representations made by Defendant RAIT and its auditor, Defendant Grant Thornton, in signing the January 2007 Registration Statement.  Therefore, the Trustee Defendants insist that they are not liable under section 11 of the Securities Act.  At this stage in the litigation, we cannot dismiss Plaintiffs' claims against the Trustee Defendants based on a defense of reasonable reliance.

Except for the issuer of securities, any person otherwise liable under section 11 of the Securities Act is exempt from liability if he can prove that:

> [A]s regards any part of the registration statement not purporting to be made on the authority of an expert, and not purporting to be a copy of or extract from a report or valuation of an expert, and not purporting to be made on the authority of a public official document or statement, he had, after reasonable investigation, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

15 U.S.C. § 77k(b)(3).  This provision makes clear that the defendant has the burden of proving reasonable reliance as an affirmative defense.  <u>Id.</u> § 77k(b); <u>Herman & MacLean v. Huddleston</u>, 459 U.S. 375, 382 (1983).  Because reasonable reliance constitutes an affirmative defense, Plaintiffs need not have pleaded any facts establishing that the Trustee Defendants did not reasonably rely.  We can only dismiss Plaintiffs' claims against the Trustee Defendants at the

motion to dismiss stage if the defense appears on the face of the Complaint.  Leveto v. Lapina,

258 F.3d 156, 161 (3d Cir. 2001); ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994).  In

making this determination, we may look to the allegations made in the Complaint, the exhibits

attached to the Complaint, and any documents whose authenticity no party questions and whose

contents are alleged in the Complaint.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548,

560 (3d Cir. 2002).  We can only consider documents attached to a defendant's motion to dismiss

if they are referred to in Plaintiffs' Complaint and if they are central to Plaintiffs' claims.  Id.

　　　　The Trustee Defendants first assert that the Complaint and the documents cited therein

"repeatedly allege that RAIT's management and auditors, not [the Trustee Defendants],

addressed the accuracy of RAIT's financial statements and had access to information confirming

their accuracy."  (See Trustee Defs.' Mem. Supp. Mot. Dismiss, 12.)  But as persons who signed

the January 2007 Registration Statement, the Trustee Defendants can be held strictly liable under

section 11 of the Securities Act.  15 U.S.C. § 77k(1).  The fact that other parties were primarily

responsible for preparing a registration statement may be relevant to a defense based on

reasonable reliance, but such information is not conclusive in establishing either subjective or

objective reliance after reasonable investigation by the relying party.

　　　　The Trustee Defendants next point to four documents that allegedly support the defense

of reasonable reliance.  However, Plaintiffs' Complaint only makes reference to two of these

documents, RAIT's Form 10-Q for the quarter ending March 31, 2007, and the Grant Thornton

Audit Opinion.  (Compl. ¶¶ 136, 138.)  Therefore, we will not consider the other two documents

proferred by the Trustee Defendants, namely RAIT's Audit Committee Charter and Trust

Governance Guidelines.[15] (See Trustee Defs.' Mem. Supp. Mot. Dismiss, 12-14.)

The Trustee Defendants argue that RAIT's Form 10-Q and the Grant Thornton Audit Opinion demonstrate that the Trustee Defendants reasonably relied on the representations of Defendant RAIT and the Officer Defendants.  RAIT's Form 10-Q for the quarter ending March 31, 2007, states in part that "[t]he accompanying unaudited interim consolidated financial statements have been prepared by management." (Compl. ¶ 136.)  The Grant Thornton Audit Opinion states that "financial statements are the responsibility of [RAIT's] management." (See Trustee Defs.' Mot. Dismiss, Ex. A.)  Such statements however cannot establish the Trustee Defendants' defense of reasonable reliance for several reasons.  First, RAIT's Form 10-Q for the quarter ending March 31, 2007, and the Grant Thornton Audit Opinion were incorporated into the July 2007 Registration Statement but not into the January 2007 Registration Statement at issue in Count One.  Second, these statements seem only to address misrepresentations related to RAIT's accounting practices and resulting financial statements and do not relate to misrepresentations related to RAIT's credit underwriting and monitoring practices.  Third, while these statements support RAIT's involvement in preparing the company's financial statements, they do not establish that the Trustee Defendants subjectively relied on RAIT's involvement or that any such reliance was reasonable.  Finally, no document supplied alleges that the Trustee Defendants conducted a reasonable investigation before any reliance took place.  For all these reasons, we find that the Trustee Defendants have not established their affirmative defense of

---

[15]    Even if we did rely on these documents, our opinion on the Trustee Defendants' affirmative defense of reasonable reliance would not change.  Neither document establishes that the Trustee Defendants actually did rely on representations by either RAIT or Grant Thornton, and neither document discusses any reasonable investigation conducted by Trustee Defendants before engaging in such reliance.

reasonable reliance at this stage in the litigation.

      F.      <u>Scienter Requirement under Section 10(b) of the Exchange Act (Counts Seven and Eight)</u>

Pursuant to section 10(b) of the Exchange Act, it is unlawful for any person "to use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 promulgated under section 10(b) of the Exchange Act implements this section by declaring it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of a security.

17 C.F.R. § 240.10b-5. According to the Supreme Court, a private action brought pursuant to section 10(b) and Rule 10b-5 must establish the following elements: "(1) *a material misrepresentation (or omission)*; (2) *scienter*, *i.e.*, a wrongful state of mind; (3) *a connection with the purchase or sale of a security*; (4) *reliance*, often referred to . . . as 'transaction causation'; (5) *economic loss*; and (6) *'loss causation,' i.e.*, a causal connection between the material misrepresentation and the loss." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 341-42 (2005).[16]

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 127 S. Ct. 2499, 2507 (2007) (quoting <u>Ernst & Ernst v.</u>

---

[16]     Section 20(a) of the Exchange Act makes persons liable for violations of the Exchange Act by entities they control. Thus, for purposes of this action, proof of scienter is necessary for Plaintiffs to proceed under both Counts Seven and Count Eight.

Hochfelder, 425 U.S. 185, 193-94 & n.12 (1976)).  Under the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" in order to establish the element of scienter.  15 U.S.C. § 78u-4(b)(2); Id. at 2508.  The plaintiff must allege such an inference for each defendant individually.  See Winer Family Trust v. Queen, 503 F.3d 319, 337 (3d Cir. 2007) (finding that the group pleading doctrine did not survive the enactment of the PSLRA).  A plaintiff may adequately plead a "strong inference" of scienter "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)).

Under either theory of scienter, the court must "accept all factual allegations in the complaint as true" as in any other motion to dismiss.  Tellabs, Inc., 127 S. Ct. at 2510.  However, inferences of scienter taken from these factual allegations will "survive a motion to dismiss only if they are both reasonable and 'strong' inferences."  In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 150 (3d Cir. 2004) (quoting In re Navarre Corp. Sec. Litig., 299 F.3d 735, 741 (8th Cir. 2002)).  To determine whether an inference is strong, the court "must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."  Tellabs, Inc., 127 S. Ct. at 2510.  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  Id.  "The inquiry . . . is whether *all* of the facts

24

alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 2509.  In examining all facts, the court must "consider the complaint in its entirety," including any "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id.

Defendant RAIT and the Officer Defendants claim that Plaintiffs have failed to plead scienter with particularity.  (Def. RAIT & Officer Defs.' Mem. Supp. Mot. Dismiss, 30.)  We will first address the sufficiency of Plaintiffs' allegations of circumstantial evidence demonstrating conscious misconduct or recklessness.  Because we find that Plaintiffs have adequately plead a strong inference of scienter through conscious disregard or recklessness, we need not address Plaintiffs' motive and opportunity allegations.

Defendant RAIT and the Officer Defendants assert that Plaintiffs have failed to plead factual allegations that serve as circumstantial evidence of conscious misbehavior or recklessness.  In response, Plaintiffs state that the Complaint set forth a variety of facts, which they claim make out a strong inference of scienter.  These facts include the senior positions that the Officer Defendants held in Taberna and/or RAIT, the relatedness between the subject of the fraud and RAIT's core business, the Officer Defendants' access to information contradicting the misstatements, the Officer Defendants' duty to monitor, and the disparity between RAIT's actual impairment and exposure and the claimed impairment and exposure.  (Lead Pl.'s Mem. Opp'n Mot. Dismiss, 52.)  We find that these factual allegations do adequately plead strong circumstantial evidence supporting conscious disregard or recklessness.

Before examining each of Plaintiffs' factual allegations, it is important to understand the meaning of conscious misbehavior and recklessness.  Conscious behavior involves "intentional

25

fraud or other deliberate illegal behavior." In re Advanta Corp. Sec. Litig., 180 F.3d 525, 535 (3d Cir. 1999). Recklessness is defined as "[h]ighly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d at 276. The standard of recklessness is a demanding one to ensure that "the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception." In re Digital Island Sec. Litig., 357 F.3d 322, 332 (3d Cir. 2004) (quoting McLean v. Alexander, 599 F.2d 1190, 1197 (3d Cir. 1979)).

One allegation in support of scienter is that the Officer Defendants, as the most senior executives of Taberna and/or RAIT, made frequent misstatements that concerned core business and operations despite access to contradictory information. Although "blanket statements that defendants must have been aware of the impending losses by virtue of their positions within the company" will not suffice for a pleading of scienter, Advanta, 180 F.3d at 539, "courts have repeatedly held . . . that knowledge of *core activities* of a business may be imputed to its highest officials in some circumstances," In re Stonepath Group, Inc. Sec. Litig., No. 04-4515, 2006 WL 890767, at *12 (E.D. Pa. Apr. 3, 2006) (emphasis added). However, the court should not "impute knowledge absent particularized allegations showing that defendants had ample reason to know of the falsity of their statements." Id.

In the present case, the allegedly false statements related to RAIT's core business and operations. Such misstatements involve the diligence of RAIT's credit underwriting and monitoring standards, the extent of Taberna and RAIT's risk exposure in the troubled real estate

market, and RAIT's compliance with GAAP and the financial data resulting therefrom.  (Compl.

¶¶ 337, 339, 345, 348, 350, 352, 354, 357, 364, 368, 375, 379, 386, 389.)  Looking first at

RAIT's credit underwriting and monitoring practices, RAIT's public filings admitted that the

"[c]ore components of [its] business include . . . a disciplined credit underwriting process."  (Id.

¶¶ 116, 125.)  Thus, any misstatements regarding RAIT's credit underwriting and monitoring

processes were related to RAIT's core business operations.  Moving next to the exposure faced

by Taberna and RAIT, it is clear that a company involved in the origination of real estate loans

would be continuously aware of its exposure resulting from such lending practices.  (Id. ¶ 3.)  For

similar reasons, RAIT's compliance with GAAP is also related to the core activities of RAIT.

Because SFAS 115, the principle of accounting connected to Defendants' alleged misstatements,

involves the taking of other-than-temporary impairments when the company is faced with the

improbability of collecting all amounts due, RAIT's core businesses of lending and monitoring

their investments are implicated.  (Id. ¶¶ 3, 142.)

   In addition to finding that the alleged misstatements related to RAIT's core business

operations, we also find that Plaintiffs have sufficiently alleged that the Officer Defendants (and

therefore by imputation Defendant RAIT) had ample reason to know of the falsity of these

statements.  The Complaint alleges that, as stated in RAIT's Form 10-K for December 31, 2006,

all Officer Defendants were members of RAIT's management investment committee that met

two times per week to monitor RAIT's credit risks and to review its investment portfolio.  (Id. ¶¶

317-18.)  As members of this committee, the Officer Defendants had access to both inside and

public information concerning the TruPS issuers.  (Id. ¶¶ 131-32.)  The Complaint corroborates

these allegations with several statements by confidential witnesses.[17]  A former Senior Vice President states that RAIT knew by the third quarter of 2006 that the markets in which it was invested were "a disaster."  (Id. ¶ 104.)  Another Senior Vice President notes that the Officer Defendants controlled the Taberna component of RAIT, a small group of "tight-knit" individuals. (Id. ¶ 316.)

Despite the demanding standard of recklessness imposed in pleading a strong inference of scienter, we find that Plaintiffs have sufficiently established it here.  Because the alleged misstatements involved RAIT's core business operations and because the Officer Defendants had ample reason to know of the falsity of their statements, there is a strong inference of scienter in this case.  Although we base our decision on the above theory, we note that other facts pleaded by Plaintiff further support the existence of scienter as an inference at least as cogent and compelling as any nonculpable inference such as mere negligence.  First, the sheer size of the impairment eventually taken by RAIT adds to the inference that the Officer Defendants and Defendant RAIT by imputation must have had some awareness that the problem was brewing.

---

[17]     Statements from confidential witnesses can support allegations of scienter "where plaintiffs rely on confidential personal sources but also on other facts . . . so long as the latter facts provide an adequate basis for believing that the defendants' statements were false." California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126, 146 (3d. Cir. 2004).  If a plaintiff cannot establish facts supporting scienter without the use of confidential sources, "there is no requirement that [the sources] be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Id.  This requirement usually entails naming the time period that the confidential source worked at the defendant company, the dates during which the source acquired the information, and the facts detailing how the source obtained the information. Id. at 148.  Because we find that these confidential witnesses merely corroborate what Plaintiffs already allege and support with other proof, we need not decide whether Plaintiffs have described these confidential witnesses with particularity.  However, for each witness, Plaintiff does at least state the witness's position and time period spent at RAIT.

(Id. ¶ 7.)  While size alone is not sufficient to give rise to an inference of scienter, it certainly

bears on our analysis.  Second, even though we do not directly consider Plaintiffs' motive and

opportunity allegations,[18] we do find the familial and business relationships involved in the

merger between Taberna and RAIT relevant in our consideration of scienter.  (Id. ¶¶ 62-65, 73-

79.)  All of these factual allegations make scienter a strong inference that is at least as compelling

as mere negligence on the part of the Officer Defendants.

> G.      Misrepresentations and Omissions of Material Fact under Section 10(b) of the
>         Exchange Act (Counts Seven and Eight)

_____ In order to bring a private cause of action under section 10(b) and Rule 10b-5 of the

Exchange Act, Plaintiffs must allege a material misrepresentation or omission.  Dura Pharm., Inc.

v. Broudo, 544 U.S. 336, 341-42 (2005).  Defendant RAIT and the Officer Defendants assert that

Plaintiffs have failed to plead the elements of falsity and materiality for their claims under the

Exchange Act.[19]  The arguments asserted by Defendants are the same as those asserted against

Plaintiffs' claims under the Securities Act.  (See Def. RAIT & Officer Defs.' Mem. Supp. Mot.

Dismiss, 30.)  Thus, our analysis is the same with one exception: we must ensure that Plaintiffs

---

[18]     "Motive entails allegations that the individual corporate defendants stood to gain in a concrete and personal way from one or more of the allegedly false or misleading statements and wrongful nondisclosures."  Wilson v. Bernstock, 195 F. Supp. 2d 619, 633 (D.N.J. 2002) (citing Novak v. Kasaks, 216 F.3d 300, 307 (2d Cir. 2000); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 621 (4th Cir. 1999); In re Nice Systems, Ltd. Sec. Litig., 135 F. Supp. 2d 551 (D.N.J. 2001)).  In order to "assert a concrete and personal benefit to the individual defendants," plaintiffs may not rely on "motives that are generally possessed by most corporate directors and officers."  GSC Partners CDO Fund v. Washington, 368 F.3d 228, 237 (3d Cir. 2004) (citing Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001)).

[19]     As previously stated, section 20(a) of the Exchange Act makes persons liable for violations of the Exchange Act by entities they control.  Thus, for purposes of this action, Plaintiffs must prove the elements of both falsity and materiality to proceed under Counts Seven and Eight.

have pleaded falsity and materiality with particularity as required by Federal Rule of Civil

Procedure 9(b) and the PSLRA.  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276

(3d Cir. 2006) (finding that plaintiffs alleging fraud under the Exchange Act must comply with

the heightened pleading requirements of both Rule 9(b) and the PSLRA).

     Pursuant to Rule 9(b), a party alleging fraud or mistake "must state with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b) requires, at a

minimum, that plaintiffs support their allegations of securities fraud with all of the essential

factual background that would accompany 'the first paragraph of any newspaper story'— that is,

the 'who, what, when, where and how' of the events at issue."  In re Suprema Specialties, 438

F.3d at 276-77 (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.

1997)).  The PSLRA further explains that a complaint claiming securities fraud must "specify

each statement alleged to have been misleading [and] the reason or reasons why the statement is

misleading."  15 U.S.C. § 78u-4(b)(1); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct.

2499, 2508 (2007).

     Plaintiffs comply with both heightened pleading requirements in alleging the falsity of

material statements.  The Complaint methodically lists the various statements at issue in this

action and specifies which Officer Defendant made each one.  (Compl. ¶¶ 338-89.)  Plaintiffs

also describe the exact reasons that they find each statement to be false and plead that such

misstatements are material.  (Id. ¶¶ 337, 339, 345, 348, 350, 352, 354, 357, 364, 368, 375, 379,

386, 389.)  Though such allegations are stated in a conclusory fashion, Plaintiffs plead facts

supporting the elements of falsity and materiality throughout the Complaint as discussed in

section B of this Order.  Therefore, we find that Plaintiffs have sufficiently plead falsity and

materiality with particularity.

      H.      <u>Pre-Merger Conduct</u>

      In the final two sentences of their Motion to Dismiss and without any legal support, Defendant RAIT and the Officer Defendants assert that Plaintiffs, as RAIT shareholders, cannot bring claims for fraudulent statements made about Taberna's business before the closing of the merger.  (Def. RAIT & Officer Defs.' Mem. Supp. Mot. Dismiss, 39.)  We cannot agree.  A class period may begin on the date of a merger announcement as Plaintiffs have asserted here, not simply on the date of the merger closing.  <u>See</u> <u>Weiner v. Quaker Oats Co.</u>, 129 F.3d 310, 313-14 (3d Cir. 1997).  Plaintiffs, however, must be able to establish all necessary elements of a securities fraud claim.

IV.     CONCLUSION

     Accordingly, Defendants' Motions to Dismiss (Doc. Nos. 70-77) are granted in part and denied in part.  An appropriate order follows.